Learning Alliance LLC. Arguments not to exceed 15 minutes per side. Mr. Newberg, you may proceed for the appellant. Thank you. May it please the court, my name is Brad Newberg and I represent Clockwork IP. I've reserved three minutes for rebuttal. To be clear, this is not an appeal trying to overcome complicated fact issues. It is instead based on specific legal errors. In fact, I'll spend most of my time on two clear legal issues that require little review of the record. Now, it is undisputed that Clockwork never gave Hiller permission to have a derivative work of Clockwork's materials made. So, legal issue number one is whether Clockwork's license with third-party SGI, which conveyed no IP rights and simply allowed SGI to teach Clockwork's materials as is to student members like Hiller. Whether that Clockwork SGI license somehow unambiguously allowed SGI to authorize its students to make and hire others to make derivative works of Clockwork's materials. And issue two, legal issue two, is whether the court is going to adopt the lower court's pervade standard for unauthorized derivative works. That is, that one can own the copyright in the entirety of an unauthorized work, i.e. an infringement, as long as the unauthorized material is not pervasive and spread throughout the whole work. A standard which has not been decided by the circuit, but whose reasoning has been rejected by the other circuits to consider it, and the argument for which the Seventh Circuit even explicitly stated in Pickett has never been taken seriously. We've raised other issues, which I will discuss, but regarding these two issues, if you agree with Clockwork's position on both of them, then the decision below must be reversed. If you agree with Clockwork's position on just one of them, however, then the decision below must be vacated and remanded for a new trial. And what I'd really like the court to keep in mind is we don't know what the jury found. The use of a general verdict form and lack of any authorization instruction at all, and the use of the pervade standard, means we simply cannot excise the verdict from the legal errors. Now, first on the authorization issue, you can see from the record that... Did you ask for a special verdict? Yes. Did you ask for a special verdict? We did. We did, Your Honor. Document 218-16, we asked for a special verdict form, and we asked for authorization instructions, and we objected to the pervade's instruction. Now, on the authorization issue, you can see from the court's holding on the judgment notwithstanding the verdict motion, confused the parties by finding that Clockwork may have sold or licensed materials directly to Hiller. Now, there's no evidence of that. It was not issued in the case, and Clockwork and Hiller have no relationship. It's never been argued. Further, all the materials were authenticated at trial as being Clockwork-owned. I believe if you ask Mr. Caolano, he'll confirm Hiller never had such a deal with Clockwork and admit that the court must have been confused as to the parties. But I believe what he will say is it doesn't matter if SGI was able to and did give Hiller authorization. But the Clockwork SGI license is unambiguous, and it gives SGI no ability to give such authorization. And if the agreement were somehow ambiguous, both parties to it, Clockwork and SGI, testified unequivocally the agreement did not allow derivative works, did not allow even SGI itself to make derivative works, and certainly could not give others authorization. So the only way to find SGI was allowed to give authorization is for one to find that the SGI-Clockwork agreement is unambiguous as a matter of law the other way, explicitly stating that SGI had the right to authorize others to make or even hire others to make derivative works without Clockwork's permission. That's why we moved originally for summary judgment, but summary judgment, the district court declined to analyze the Clockwork SGI license, simply quoted one line from one section 1.2, and without explanation, said Hiller might have gotten authorization. But the only possible reading of the lower court's opinion is that if a contract allows any use of a work at all, it allows complete control of all copyright rights. And that is what Hiller also claims in its appellee brief, without support and also citing just section 1.2. But that certainly isn't the law. And we've cited cases at length to show canons of contract construction saying copyright licenses, by law, they must be construed narrowly. And you must only look at the specific copyright rights explicitly given and not include rights not expressly given. Here the derivative work right was not only not explicitly given to SGI to either do itself or sublicense, but the very next section of the contract, 1.3, states all rights not explicitly given or reserved to Clockwork. The agreement's clear, SGI student members cannot be allowed to do anything outside of their participation in taking SGI's training classes. And a use means use reading would also completely make superfluous the second half of section 1.2. So at trial, the court did not instruct the jury at all on the issue of authorization or make it part of the verdict form, despite our request to do both. Now, finally, on authorization, I do need to point something out brand new in the Hiller appellee brief. This idea that maybe SGI, not Clockwork, owned the material, so it didn't need Clockwork's permission at all. Now, this was never an issue at trial. And their brief, Hiller does not point to a single page in the supposed Hiller work where they say this is what the SGI material is. While we show side by sides of many pages of Clockwork material. And the single site Hiller gives about Ms. Silvio referring to materials as SGI materials, Ms. Silvio specifically testified that what she was testifying about was materials SGI could use simply because they were licensed by Clockwork and owned by Clockwork. And the only manual of Clockworks they even try to say that was sold to SGI is this power performing technician manual. And even though that's incorrect, it's a Clockwork work. As we show in our reply brief, it was many other Clockwork materials that were copied into the alleged Hiller work. So choosing that one manual does not even help Hiller. So second, I do want to discuss the pervades test. To be clear, we have no idea whether the jury found that Hiller had authorization to use Clockworks materials or not. Because as I point out, the court rejected the special verdict form, but also gave these instructions that the jury could decide fine for Hiller. Even if Hiller had no authorization and used significant portions of Clockworks material, as long as the jury found that the use did not pervade the entirety of the Hiller work, which it further defined as being spread out throughout every single part of the Hiller work. So based on the language used by the court, even the jury could find Hiller owned the work, even if massive amounts of that work amounted to sheer copyright infringement of Clockworks materials. Now we argued regarding this instruction at length, but the district court was steadfast on the pervades instruction. Now the Sixth Circuit has not ruled on the validity of a pervades standard. But the pervades test, any pervades standard, whether inexorably intertwined or even the broader pervades test created by the district court, its reasoning has been rejected by every circuit to consider it. With the Seventh Circuit and Pickett, as I said, going so far to say it's never been taken seriously. And Pickett has a great discussion of how Hiller's exact position would have these sort of absurd results down the line. And that reasoning has been followed by the Second, Eighth, and Ninth Circuits. And if you look at Keeling at 50 and Mulcahy at 852 and U.S. Auto Parts at 1016, these all discuss Section 103 and how unauthorized, unlawful derivative works cannot have copyright protection, even if they add new matter. And the only cases Hiller offers on this point are, one, dicta in a 40-year-old Second Circuit case, which is invalid based on the Second Circuit taking on this reasoning more recently in Keeling. And in fact, Keeling even cites the legislative history of Section 103 to say you would need an exception like fair use in order to take an unauthorized work and make it lawful, so even the new work could be copyrightable. And second, Hiller cites two trial court decisions from the Ninth Circuit, also invalid due to the Ninth Circuit's reasoning in U.S. Auto Parts. Mr. Newberg, let me ask you a question. Is it your client's position that it doesn't matter how much material, new material Hiller added to the work of its own, that your client is entitled to prevail even if Hiller added, you know, 51, over 50 percent of the materials new? Is that your position? Well, there's two parts of what you're saying, because the 50 percent new versus how much. There is, of course, if there was a word, a short word, a phrase, you know, a thing as the Second Circuit mentioned in sort of fair use of something, that that wouldn't make it an unauthorized derivative work. Certainly taking 50 percent or even 20 percent or 30 percent would be enough to have copyright infringement under the law and therefore make it an unauthorized derivative work. So I don't want to go to the absolute extreme, right, Your Honor, if they took a word and I said, oh, look, that's our word. We're not doing that here. But unauthorized derivative work, any unauthorized derivative work does not matter if there's other new work because Hiller tries to have a copyright registration, claims registration, this entire work. They never said I think you're I think you're opposing counsel is going to argue there's enough evidence here for the jury to have found that there was enough new work to allow this that to defeat your claim. I mean, isn't that what they're going to argue? Well, Your Honor, I think that would be incorrect if they argued because they admitted they not only made that incorrect as incorrect as a matter of the proof. Incorrect as a matter of the proof at trial. Well, it's not a matter of law. It's incorrect as a matter of law. The parade standard is incorrect. If this idea that has to be inexorably intertwined throughout the entirety of every part of the work incorrect, we don't really know what the jury found. What we do know is that the court below said it was a derivative work that Hiller admitted at summary judgment that at least 14 pages were taken directly from clockwork that at trial made at least 25 pages. And the nice nose actually worked from clockwork. And Hiller's director of training said in some cases, even the clockwork IP nose was taken off and Hiller's was put on. So we don't really know exactly what it was, what the court actually the jury actually found. And that's the important part I want to get through here is that we can't excise the verdict from the from the jury, from the legal errors. It's not a case of where, oh, can we find some avenue where the jury might have been able to find for Hiller by saying this was original or this was authorized or this was unauthorized, but it didn't pervade. We don't know exactly what the jury found. And so given by ignoring the unambiguous nature of the SGI clockwork contract and not instructing the jury regarding authorization at all and giving the jury the pervades test and rejecting a special verdict, the entire verdict can't be excised. And we need to follow the structure of dowry and either reverse or remand for a new trial. I see that my time is up. I have three minutes for rebuttal unless unless your eyes have questions. Otherwise, I'll sit down, wait for my rebuttal time. You'll have your rebuttal time. Thank you, your honor. I appreciate it. Mr. Catalano. You may proceed, Mr. Catalano. I think you're on mute. I have it now. Thank you. May it please the court. My name is Jeffrey Catalano on behalf of Hiller LLC, and I'd like to start with the derivative works discussion. Clockwork argues in the reply brief and similar language throughout the oral argument this morning that the district court erred in instructing the jury that unauthorized material must pervade the work to invalidate the copyright. Those words were not in the jury instruction. The pervade standard that has been nebulously referred to in this oral argument is not in the jury instruction. The jury instruction, which really has never been fully discussed in the briefs, is directly quotes from and follows directly from the statutory provisions on copyright ability of a derivative work. So it's at page ID 11367. The first paragraph is a quote of the definition of derivative works from section 101, correct as a matter of law. The second paragraph is a direct quotation from section 103B, which provides the framework that a copyright in a derivative work extends only to original material of the derivative author and doesn't cover any of the preexisting material. Again, 103B, that is correct as a matter of law. And my colleague's argument that Hiller is claiming the copyright in a whole book, in terms of copyright law, that actually doesn't make sense. No matter how broad the copyright is, the derivative author only gets protection for the new material in 103B as instructed to the jury. Again, a correct instruction. The third paragraph is a direct quote from 103A. Copyright protection for a derivative work does not extend to any part of the derivative work in which such material has been used unlawfully. That is a direct quote from the statute, and that is legally correct. The fourth paragraph, which is what it seems like Clockwork is objecting to, is also legally correct. It follows directly from 103A. It says, where use of unauthorized preexisting material pervades the entire work or is inextricably intertwined with the preexisting material, copyright protection may not be granted. That's also a correct statement. But what Clockwork is arguing about is the potential implication that there may be copyright protection in an authorized derivative work. The instruction doesn't actually say that. There is nothing in this instruction that is legally erroneous. The parties got into the weeds in the briefs and discussed Pickett v. Prince, whether the law was correct, whether the decision was correct. This panel does not need to decide that because these instructions are legally correct. And when viewed as a whole, which is how this panel must view jury instructions, they adequately inform the jury of the relevant considerations to provide a sound basis of law. And it's as a whole, this instruction, connection with the instruction on originality, and in connection with the instruction on protected versus unprotected matter. The jury was asked to consider originality. They were asked to consider this overlap analysis that Clockwork presents and consider what is protected that was allegedly copied and what was unprotected material. The steps, the system, the process, ordinary industry phrases. The jury was asked to filter all that out. And the jury was asked to consider authorization and to what extent unauthorized material is in the manual. With those instructions, the jury has a sound basis in law. Because recall, and it came up in argument as well, there is a lot of pictures in the brief and discussion at trial of the appendix, the nice to know section. The appendix, which consists entirely of pre-existing material, some of which is pre-existing materials. But the appendix created at the very end. If the jury looked at that evidence and looked at the evidence of the creation of the manual itself, the teacher's guide, and said Clockwork copyrighted material does not pervade this manual, then it's not a derivative work at all. Because it's not based on, it doesn't transform, it doesn't recast or adapt the Clockwork material in the appendix created at the end. But the manual itself was independently created through the design workshop, a two-day workshop in which Bob Pike, the consultant, sat down with Hiller technicians and executives and brainstormed the proper best practices for doing a, for performing a service call in the relevant industries. That's where the manual was created. And that's the evidence the jury heard. If Clockwork material does not pervade this manual, then it's not a derivative work. So this verdict, even if this panel were inclined to follow the Seventh Circuit, this is not the case to present that issue. Because the instructions as a whole provide the relevant considerations. This is not a case of Harry Potter fan fiction from the reply brief or a guitar shaped like a copyrighted symbol. But a specific manual with specific evidence and the jury was adequately instructed on how to consider that evidence and find a valid copyright. Is there, Mr. Catalano, Mr. Newberg talked a lot about, I mean, you know, the conjured up an image of a jury instruction that flew in the face of not just one circuit, but the decision of the many circuits. I would gather you probably do not agree with that characterization. Can you give us your characterization of the state of the law on that point? Yes, so I believe the jury instruction accurately states the statute itself. The dispute the parties had is with respect to the Seventh and Eighth Circuit, I think we can agree on, find that as a matter of law, there is no copyright and unauthorized derivative work. Again, I don't think, and looking at Pickett v. Prince itself, it didn't make a difference how the court were to arrive at that. The work in question was a guitar shaped like Prince's symbol, and the court said that, of course, the copyrighted symbol pervades the work in question. And so the issue then is whether Congress utilized a framework where an authorized derivative work is invalid as a matter of law, or they use the language that's actually in Section 103A, which says that copyright protection for derivative work does not extend to any part of the derivative work in which material has been used unlawfully. And that goes to Judge Bush's question, is if there is a derivative work and there is an entirely separate part of it, a separate new content without unauthorized pre-existing material in it, Congress's statutory framework offers limited protection to that material, to that new material. That's how Congress chose to set the statute. However, the decision in Pickett v. Prince is actually quite instructive, because what Judge Posner says is, if the pre-existing material did not pervade the work in question, then it wouldn't be a derivative work in the first place. Because the question of—you can use pervasiveness or you can use another framing—the question of the extent to which the pre-existing work is within the work in question, that is part of the threshold consideration of whether the work is derivative in the first place. The Seventh Circuit considered pervasiveness— Mr. Catalano, what evidence is there from which the jury could have decided that Clockwork's material did not pervasively invade the work? There's quite a bit of it, Your Honor, and it starts with independent creation at the two-day design workshop. This work was not cobbled together, a collage of Clockwork material, but the jury saw evidence of how this was created with a two-day brainstorming session where people identified their best practices on poster boards. And there's little arrows on the poster board and crosses out. There's photographs of that. Then there's photographs of the cards that were created from the posters. Then there was a roadmap created from those cards. And then the jury found every single draft. They saw all of it. They saw it created independently. Clockwork's analysis is comparing—it's a collage of 20 or so different Clockwork materials, which were never actually provided to Bob Pike. And so let's look at what's the set the tone module. Jimmy Hiller Jr. explained how that brainstorming session went. The jury was told how it went. And he said, this material came from my and the other participants' experience. There's a right way to do things, is what he said. Clockwork claims that it actually came from what's called a ride-along survey, which is a checklist. Bob Pike never had that checklist. Jimmy Hiller Jr. never saw that checklist. So that was independently created. Moreover—and this goes to the ownership issue—that SGI's president, Rebecca Castle, testified that those very steps that Clockwork says came from the ride-along survey are in three or four different places in the collective materials related to SGI, including materials that Clockwork purchased the copyrights of. And she gave a great example. It's called the Immediate Impact Imaging Booklet that she says contains the same content that's allegedly in that poster board and that module set the tone. So to the extent the jury found that there were similar words, similar steps in those modules, there's three ways it could have gotten in there. One, it was independently created as it was testified to. Two, that these are just steps in a process. And both manuals teach best practices in the industry. Both are in the same industry. Common words and phrases, similar steps, like park your car on the side of the street. We would expect that to be in there. Three, it could have come from SGI, who testified that that material is in their possession, and they're the ones who actually work with Bob Pike. Or fourth, as Clockwork says, the only conclusion is it could have been copied from materials that Bob Pike never had. Okay, so Mr. Catalano, as I understand it, you're arguing that work contains some Clockwork material. It also contains some, for lack of a better word, generic material, industry-wide material that anyone uses. So it's not really copyrightable material. And then it also contains some Hiller material. Is that your position? I would say it slightly differently. I think there is evidence that in the appendix, there is some material that at least is found in Clockwork material. The manual itself, in any work, but any instructional manual, is going to consist of some non-protectable material. Right. And I would say that the work itself is Hiller's expression of that unprotectable system of customer service. Is there any original content from Hiller in the work? Is there any original content? Absolutely. And that is the material that was brainstormed at that meeting. And then there's also the... Can you point to any particular section or any particular pages of the work that say is Hiller material? I'll point you to, one second, the Set the Tone module, which is at pages 191 to, I think, 196-ish of the module. And this is just an example. It's non-limiting. And the testimony of Jimmy Hiller Jr. on how that manual was created. Now, even if the words are the same, if they were independently created, it's still copyrighted. It's only when it was copied. And there's no direct... There's no evidence that that was copied. It was testified to that it was independently created. One last point on this issue. The jury was instructed... So are you contending the arrangement by Hiller... Hiller's arrangement of other material can be copyrighted? And their arrangement of non-copyrightable material, in and of itself, the arrangement is copyrightable. Is that what you're contending? We are. And if you look at the brainstorming exercise, if you were to say every step that's on that poster board is in itself not copyrightable, that two-day process was the selection of steps.  Selection, coordination, arrangement. That is originality under a compilation, right? So let me make sure I get this. It would be essentially the organization of familiar, unprotectable concepts and the structuring, the prioritizing, all of those would be what you would copyright. That is the absolute minimum of what could be copyrighted here. And it was not just that. It's the selection of those best practices. Then it's your coordination and arrangement of them into a training manual. But just selecting... I don't see how that's very different from what I see it. What's the... I was just adding... They're figuring out what ought to be in there. They're figuring out what's important to them as a company. They're figuring out how they're going to arrange it in order to best communicate with employees. Are we talking about the same thing or not? I may have misunderstood. I think that's correct. I guess that's correct. Okay. I'd like to go to... We're running out of time here. I'd like to go to two issues really quickly. The jury was instructed that it's Clockwork's burden, the burden on the party opposing validity to prove invalidity. And this is Clockwork's DJ action, remember. But this was in a jury instruction, which was not objected to. And the reason is, is because we have a valid copyright registration. It's prima facie evidence of validity. The jury was instructed it's Clockwork's burden to prove that our manual was not... That the copyright was not valid. Finally, Doherty does not require you to retry this case based on... And I'm not going to get this through. Based on this contract issue, the contract interpretation issue. All three theories of original work, compilation, and derivative work were submitted to the jury properly, notwithstanding the interpretation of that contract. And Doherty does not require it to be retried. Thank you. If there's no further questions, I'll see my time. Well, there's no more time. Yeah, if you're out. I'm out. Thank you very much. May I begin, Your Honor? Yes, sir. Thank you. So, just to, obviously, rebut and address some of Mr. Kalao's points. First off, this fourth paragraph of page 20 of the jury instructions, page ID 11255. The fourth paragraph, which has this pervades instruction. And we argued this pervades test multiple times. And this was paragraph Hiller asked for, because they specifically argued that their position was that an unauthorized work absent pervades can have a copyright. And this pass through or spread the whole extent of to be diffused throughout every part of that doesn't come from the Copyright Act. That's a dictionary definition that they propose. I think we need to really talk about section 103, because the cases, Kickett, Mulcahy, U.S. Auto Parts, Keeling, they all discuss 103 and the legislative history and how Hiller's argument reads out section 103A entirely. Section 103B says you can't own any pre-existing material whatsoever already, regardless of its status. If you can own the new stuff, even where a work was unauthorized, there'd be no need for section 103A, because 103B says you can only own the new stuff. But section 103A says that you can't own in any part of infringing material. And they actually admit this in their brief. They specifically say that when you have an unauthorized derivative work, you cannot own the copyright in the entirety of the work, even where you add new material. That's at page 58 of their brief. They even italicized their own admission. And that's consistent with what Keeling and U.S. Auto Parts and Kickett and Mulcahy have. And the Keeling even cites this legislative history to give examples to say the only way you can get a copyright in an unauthorized derivative work is to prove that some exceptions, such as fair use, made your derivative work lawful as opposed to unlawful. And Mr. Connelly, I'll discuss at length that this is an arrangement. An arrangement is absolutely a derivative work. The text is taken verbatim. The image was taken verbatim. And as Your Honor, Judge Bush just described, they can't point to a single page. I implore you to check their Pele brief. They do not point to a page where they actually create anything from scratch. Mr. Connelly, I'll answer your question by mentioning pages 191 to 196. I'm not sure what that is. There is no 191 to 196 in this Hiller work. It only goes up to 118 pages. But the evidence even that the workshop was used, the workshop used clockwork materials. The clockwork materials were brought to the workshop. And in any case, brainstorming is not a tangible expression. They have to show copyrightable expression. And finally, on the authorization point, again, there's no authorization instruction whatsoever. We believe the district court below got wrong in terms of it being unambiguous that SGI could not sublicense. But there is no instruction whatsoever if it actually got to the jury. And the last thing I would say is that a registration is not a clockwork burn. A registration is a rebuttable presumption, which we did rebut. And then it doesn't matter if there's a registration if it's unlawful. Thank you. We appreciate the argument both of you have given, and we'll consider the case carefully. Thank you very much for your time.